*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1373**

State of Minnesota,
Respondent,

vs.

Joseph Douglas Ankney,
Appellant.

**Filed June 20, 2016
Affirmed
Toussaint, Judge***

St. Louis County District Court
File No. 69HI-CR-15-38

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Mark S. Rubin, St. Louis County Attorney, Brian D. Simonson, Assistant County Attorney, Hibbing, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, St. Paul, Minnesota; and

Sharon R. Markowitz, Liz Kramer, Special Assistant Public Defenders, Stinson Leonard Street LLP, Minneapolis, Minnesota (for appellant)

        Considered and decided by Larkin, Presiding Judge; Kirk, Judge; and Toussaint, Judge.

_____

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**TOUSSAINT**, Judge

Appellant challenges the denial of his motion to suppress the evidence. Because the three criteria of the plain-view exception to the warrant requirement were met, we affirm the denial of the motion to suppress.

## DECISION

When reviewing a pretrial order on a motion to suppress evidence, an appellate court applies the clearly erroneous standard to the district court's factual findings and a de novo standard to its legal determinations. *State v. Milton*, 821 N.W.2d 789, 798 (Minn. 2012) (citation omitted).

When Hibbing police officers E. and H. responded to a complaint that rocks had been thrown through the picture window of a residence, the officers saw distinctive footprints in the snow 15 to 20 feet in front of the broken window. The complainant identified appellant Joseph Ankney as the only potential suspect, and the officers knew appellant had previously violated the restraining order prohibiting him from being at the complainant's residence.

The officers went to appellant's apartment complex, where they noticed a footprint matching those they had seen. They entered the complex, went to appellant's apartment, and knocked on the door. Appellant opened it, and one officer saw a pair of shoes, one of which was turned to display a sole identical to those that had made the footprints. The shoes were taken into evidence.

Appellant moved to suppress this evidence.  His motion involved a legal determination of whether the officer who saw the shoes met the three criteria of the plain-view exception to the warrant requirement.  *See State v. Holland*, 865 N.W.2d 666, 671 (Minn. 2015) (listing the criteria of the plain-view exception: (1) the officer be lawfully in the position from which the item is in plain view, (2) the officer has a lawful right of access to the item, and (3) the incriminating nature of the item be  immediately apparent to the officer).

**1.    Was the officer lawfully in the position from which the shoes were in plain view?**

The officers testified that, when they arrived at appellant's apartment, they heard music loud enough to violate the city ordinance.  Officer E., standing in front of Officer H., knocked.  Officer H. testified that, when appellant opened the door, the music was too loud "to have a common conversation," that Officer E. told appellant they needed to talk to him about the music, asked him to turn it down, and asked if they could come in, and that appellant walked about 12 feet into the apartment turned the radio down, and turned around to face the officers.  Officer H. was asked where he was at this point; he answered, "I was behind [Officer E.] standing in the doorway."  Asked what he could see from the doorway, Officer H. answered that he "looked to the left around the door frame – the door itself" and "there were the shoes on the floor; one of them was tipped on its side."  When Officer H. was asked if he had stepped into the apartment at this point, he said he "had taken one, maybe one step" and that "[his] shoulder was rubbing on the door or holding the door open."  Officer H. testified that Officer E. continued speaking with appellant;

3

when asked if, during their conversation, he had moved farther into the apartment, he said, "[A]t this point, no." He was asked if he was "essentially at the doorway then?" and answered, "Yup."

On cross examination, Officer H. testified:

> Q.      So [appellant] opens the door and he's asked to turn down the music?"
> A.      Yes.
> Q.      Okay. He turns away to do that and then you and [Officer E.] walk in the apartment.
> A.      Yeah, [appellant] started to walk away from us. And we didn't walk into the apartment, [Officer E.] took a step to the front edge of the door and I followed behind him.

Officer E. testified that he "stepped across the threshold" of appellant's apartment and walked "four [or] five feet" into it and that, when he did so, Officer H. "was still standing at the threshold of the doorway."[1]

Officer H. was lawfully in the doorway of appellant's apartment when he saw the shoes in plain view.

## 2.      Did the officer have a lawful right of access to the shoes?

"A peace officer *shall* arrest without a warrant and take into custody a person whom the peace officer has probable cause to believe has violated" a harassment restraining order. Minn. Stat. § 609.748, subd. 6(g) (2014) (emphasis added); *see* Minn. Stat. § 645.44, subd. 16 ("'Shall' is mandatory.") (2014); *see also State v. Patricelli*, 324 N.W.2d 351, 353 (Minn. 1982) ("We believe that the United States Supreme Court will uphold nonexigent

---

[1] Officer E. further testified that, when he was four or five feet into the apartment, "[the] shoes [were] behind me at the time," which would be consistent with the shoes being in the plain view of someone standing in the doorway.

4

warrantless arrests initiated at the threshold of a suspect's house where the suspect voluntarily opens the door in response to knocking."). Because the officers had probable cause to believe that appellant violated the restraining order, they had a right and an obligation to arrest him and take him into custody.

Officer E. testified that, while Officer H. was still in the doorway, appellant "started stepping towards . . . [a] three foot bat or pole"; he "was [getting] within six feet of it"; and "his eyes were quickly glancing in the direction of that bat." Officer H. testified that, when Officer E. told him there was "a bat of some sort" in the apartment, he "stepped forward into the apartment" while Officer E. "was grabbing ahold of [appellant]." The officers then arrested appellant for violation of the restraining order, as mandated by Minn. Stat. § 609.748, subd. 6(g). Having entered the apartment to arrest appellant, Officer H. had lawful access to the shoes.

3.      **Was the incriminating nature of the shoes immediately apparent to the officer?**

Officer H. testified that, in front of the complainant's house, he saw "two sets of identical tracks. . . . [There] was [a] distinct tread pattern on the shoe print . . . [and] the rear outer corner of the tread was worn perfectly smooth." He also testified that, outside appellant's apartment complex, he "did notice one footprint matching the footprint [he] saw at [the complainant's] residence identically, and it was . . . within about an inch of the threshold of the doorway into the apartment complex." Finally, he testified that, when he looked to the left from the doorway of appellant's apartment, "there were the shoes on the floor; one of them was tipped on its side. You could see the bottom tread pattern . . . ." When asked what he could see about the tread pattern, he answered, "It matched the tread

5

patterns at the scene, as well as the footprint outside of the apartment building." Officer H. knew that there was a harassment restraining order prohibiting appellant from being near the complainant's house and that someone wearing shoes with that tread pattern had been in the complainant's front yard and thrown rocks through her window. The incriminating nature of the shoes he saw from appellant's doorway was immediately apparent to Officer H.

The shoes were in plain view from the doorway of appellant's apartment: the officer who saw them was lawfully in the position from which they were in plain view; the officer had lawful access to the shoes when he entered the apartment to arrest appellant; and the incriminating nature of the shoes was immediately apparent to the officer. The criteria of the plain-view exception to the warrant requirement were satisfied, and there was no error in denying appellant's motion to suppress the shoes as evidence.

**Affirmed.**