*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A25-0764**

State of Minnesota,
Respondent,

vs.

Guy Willard Blessing,
Appellant.

**Filed March 9, 2026
Affirmed
Cochran, Judge**

Aitkin County District Court
File No. 01-CR-22-897

Keith Ellison, Attorney General, Peter Magnuson, Thomas Ragatz, Assistant Attorneys General, St. Paul, Minnesota; and

James Ratz, Aitkin County Attorney, Aitkin, Minnesota (for respondent)

Travis M. Keil, Chanhassen, Minnesota (for appellant)

Considered and decided by Cochran, Presiding Judge; Bratvold, Judge; and Schmidt, Judge.

**NONPRECEDENTIAL OPINION**

**COCHRAN**, Judge

After waiving his right to a jury trial and stipulating to the state's case to obtain review of the district court's denial of his pretrial motion to suppress, appellant was convicted of two counts of felony possession of pornographic work involving a minor. In

this direct appeal, appellant challenges the denial of his motion to suppress evidence that law enforcement obtained after the search of his home and seizure of his electronic devices pursuant to a search warrant. Because the search warrant was supported by probable cause, we affirm.

**FACTS**

Respondent State of Minnesota charged appellant Guy Willard Blessing with two counts of felony possession of pornographic work involving a minor in violation of Minnesota Statutes section 617.247, subdivision 4(a) (2020). The allegations in the complaint stem from material discovered on Blessing's electronic devices after law enforcement searched Blessing's home and seized the devices pursuant to a search warrant.

On February 23, 2021, law enforcement applied for and was granted a warrant to search Blessing's home for "Miller High Life beer bottles" and "[c]ellular phones, computers and other electronic equipment and the contents thereof that could be used for the storage of personal data." The search-warrant application was made based on allegations that Blessing provided alcohol to a 17-year-old male (the minor) and made unwanted advances towards the minor on the day before the application was submitted. The minor's mother reported the allegations and law enforcement spoke with the minor.

The search-warrant application included the following information from law enforcement's interview of the minor. Blessing was a substitute teacher at the minor's school. Notwithstanding Blessing's position as the minor's teacher, the two had a relationship outside of school as friends for about a year. The minor had been to Blessing's home about 12 times to assist him with property maintenance. Each time the minor had

2

been to Blessing's home, Blessing's wife was present except on the day in question—the day before the search-warrant application was filed.

On that day, Blessing texted the minor asking him for a ride to town to get his truck because his wife fell recently and was in the hospital. When the minor arrived at Blessing's home, Blessing offered him a beer, which was not unusual. Then, Blessing asked the minor if he knew what "philia," "pedophilia," and "ephebophilia" meant. The minor said that he did not know what "ephebophilia" was and Blessing told him it was an attraction to people of the minor's age. Blessing also made comments about the minor's body, including "that his body was looking nice and he can't wait to see what boot camp will do to [the minor's] body," and that he wanted to "see the rest of [the minor's] body." During the interaction, Blessing repeatedly offered the minor another beer, and the minor felt like Blessing was pressuring him to drink more. Before leaving to pick up the truck, Blessing squeezed the minor's shoulder and said, "you going to show me," and told the minor that "he could just close his eyes and pretend [Blessing] wasn't there." Later, in the car on the way to get Blessing's truck, Blessing told the minor "that his wife would be in the hospital for a few days and . . . that [the minor] would really be helping him out by showing him," and asked the minor to text him about it. Blessing also reportedly told the minor "that he had felt this way about other kids before but never acted on it," and "just couldn't resist with [the minor]." Throughout the interaction, the minor felt uncomfortable, sickened, and scared.

The application also explained that, after interviewing the minor, law enforcement went to the high school where Blessing worked and arrested Blessing for furnishing alcohol

to the minor. Following his arrest, Blessing gave a *Mirandized*[1] statement to law enforcement that was summarized in the search-warrant application. In the *Mirandized* statement, Blessing admitted giving beer to the minor. He also stated that he "does have interests in the post-pubescent young men," and agreed that he planned to ask the minor about his body but that there was no touching or video/photography. When asked if he had acted on his feelings, Blessing said no except for pornography. Additionally,

> [Blessing] said that he does search out photos on the internet for young men. He believed that the images are supposedly not underage. Blessing said that he stores the images on his laptop. Blessing did provide a website of "Gayboytube.com" that he frequents. Blessing said that he does not consider himself a pedophile, "by definition."

Based on the foregoing information, the search-warrant application stated that law enforcement believed that a search of Blessing's residence would result in locating evidence supporting that Blessing provided alcohol to the minor and "electronic devices [that] could provide additional evidence of crimes related to juvenile sex crimes or juvenile pornography." The search-warrant application also stated that law enforcement "underst[ood] that electronic devices located during the [execution of the] search warrant would require additional warrants prior to . . . being searched."

After the district court granted the search-warrant application, law enforcement executed a search of Blessing's home for the items specified in the application: "[a]lcohol

---

[1] To protect a defendant's right against self-incrimination, law enforcement must implement "procedural safeguards" prior to subjecting the defendant to custodial interrogation, which includes informing the defendant of their right to remain silent and have an attorney present. *Miranda v. Arizona*, 384 U.S. 436, 444, 478-79 (1966).

containers specifically Miller High Life beer bottles," and "[c]ellular phones, computers and other electronic equipment and the contents thereof that could be used for the storage of personal data." Law enforcement recovered Miller High Life beer bottles and three laptop computers. The next day, law enforcement submitted three additional search-warrant applications to search the contents of a cell phone that was seized from Blessing's person when he was arrested and two of the laptop computers collected during the search of Blessing's home. The applications contained the same information as the first application and included additional details about the search of Blessing's home and the applicant's training and experience. The district court granted the three additional search warrants for Blessing's devices. After searching the devices and analyzing the digital material, law enforcement found several images of "apparent child sexual abuse."[2]

Blessing moved to suppress the evidence found on his electronic devices, arguing that law enforcement lacked sufficient probable cause to support the initial search warrant to permit law enforcement to seize Blessing's computers and other electronic devices. Blessing did not dispute the validity of the search warrant as it pertained to the alcohol

---

[2] The complaint uses the terms "apparent child sexual abuse" and "child sexual abuse material." At the time of Blessing's conviction, the relevant statute criminalized the possession of "a pornographic work" involving a minor. Minn. Stat. § 617.247 (2020). In 2025, the legislature amended the statute and changed the phrase "pornographic work" to "child sexual abuse material." Minn. Stat. § 617.247 (Supp. 2025). Although this updated language does not appear to affect the resolution of the case, we must apply the statute that was in effect at the time of the criminal offense. *See State v. Soukup*, 746 N.W.2d 918, 923 (Minn. App. 2008) (stating that a law violates the ex post facto clause "by punishing as a crime an act previously committed, which was not a crime at the time"), *rev. denied* (Minn. June 18, 2008).

containers and also did not challenge the additional three search warrants, issued after the initial search warrant, allowing the search of the contents of his electronic devices.

The district court denied the motion to suppress the evidence obtained as a result of the seizure of his electronic devices under the initial search warrant. It concluded that the information in the initial search warrant application, including that Blessing "admitted to being attracted to young men, that he had inappropriate interactions with a minor for which he was arrested . . . , and that he searches out pornography of young men," provided probable cause for the search of Blessing's home and the seizure of the devices.

The parties agreed that the district court's denial of Blessing's motion to dismiss was dispositive, and Blessing waived his right to a jury trial and stipulated to the state's case to preserve the ruling for appellate review under Minnesota Rule of Criminal Procedure 26.01, subdivision 4.[3] The state's case included the probable-cause packet submitted by the state at the omnibus hearing and the parties' agreement that the events discussed in the probable-cause packet occurred. Among other evidence, the probable-cause packet included two images of pornographic work involving a minor found on Blessing's electronic devices and affidavits establishing the ages of the victims. The district court convicted Blessing of both counts and imposed concurrent stays of imposition, placing Blessing on probation for five years.

Blessing appeals.

---

[3] Rule 26.01, subdivision 4, provides the process by which a defendant may preserve appellate review of a pretrial issue that the parties agree is dispositive. Here, the parties agreed that the district court's ruling on the search warrant was dispositive.

6

**ANALYSIS**

Blessing challenges the district court's denial of his motion to suppress evidence obtained as a result of the search of his home and the seizure of his computers under the initial search warrant, arguing that the warrant authorizing the search was not supported by probable cause.[4]

Both the United States and Minnesota Constitutions require search warrants to be supported by probable cause. U.S. Const. amend. IV; Minn. Const. art. I, § 10. "A warrant is supported by probable cause if, on the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *State v. Holland*, 865 N.W.2d 666, 673 (Minn. 2015) (quotations omitted). A fair probability requires "a direct connection, or nexus, between the alleged crime and the particular place to be searched." *State v. Souto*, 578 N.W.2d 744, 747 (Minn. 1998). "A nexus may be inferred from the totality of the circumstances," and the issuing judge may consider, among other factors, "the type of crime, the nature of the items sought, the extent of the defendant's opportunity for concealment, and the normal inferences as to where the defendant would usually keep the items." *State v. Yarbrough*, 841 N.W.2d 619, 622-23 (Minn. 2014). "[D]irect observation of evidence of a crime at the place to be searched is

---

[4] In his appellate brief, Blessing challenges the "search warrant for [his] electronic devices," but does not otherwise clarify which of the four warrants he is challenging. We focus our analysis on the first warrant authorizing the search of Blessing's home because this was the only warrant challenged by Blessing and ruled on by the district court. *See Roby v. State*, 547 N.W.2d 354, 357 (Minn. 1996) (reaffirming the principle that "[t]his court generally will not decide issues which were not raised before the district court, including constitutional questions of criminal procedure").

not required." *Id.* at 622. "The issuing judge's task is to make a practical, common-sense decision." *Id.* And "[appellate courts] afford the issuing judge great deference, recognizing that doubtful or marginal cases should be largely determined by the preference to be accorded to warrants." *State v. Sardina-Padilla*, 7 N.W.3d 585, 596 (Minn. 2024) (quotation omitted).

"When reviewing a pretrial order denying a motion to suppress, we review the district court's factual findings for clear error and its legal determinations de novo." *Id.* at 595-96 (quotation omitted). "A factual finding is clearly erroneous if it does not have evidentiary support in the record or if it was induced by an erroneous view of the law." *Id.* at 596 (quotation omitted). "When a defendant's pretrial motion claims that the facts alleged in a search warrant application failed to establish probable cause, [this court's] review is limited to the information presented in the application, and the reasonable inferences that can be drawn from that information." *Id.* "Based on that information, [reviewing courts] ask only whether the issuing judge had a 'substantial basis' for concluding that probable cause existed." *Id.* (quoting *Yarbrough*, 841 N.W.2d at 622).

Blessing argues that the district court erred in denying his motion to suppress because the search-warrant application did not establish "particularized probable cause to search for child pornography images."[5] He contends that the application "was entirely absent of any particular evidence of child pornography possession," because "[w]hile [he]

---

[5] Blessing confirmed in his reply brief and at oral argument that he is challenging only probable cause, not the particularity of the warrant, and the state correctly contends that any particularity argument asserted on appeal is forfeited because it was not raised to the district court. *See Roby*, 547 N.W.2d at 357.

admitted to an interest in 'post-pubescent young men' and viewing pornography of 'young men,' he explicitly disclaimed any interest in or possession of pornography depicting minors." Blessing maintains that the application "fails to connect his admitted interest in 'post-pubescent young men' to the highly specific crime of possessing child pornography, especially in light of his explicit denials," and that "[l]aw enforcement in . . . the absence of any prior reports from online platforms or other proactive investigations . . . appears to have proceeded on a 'hunch' that [Blessing's] admitted interest in 'post-pubescent young men' somehow translated into probable cause for a wide-ranging search of his electronic devices for child pornography." Blessing's arguments ignore the reasonable inferences that can be drawn from the totality of the information presented in the search-warrant application.

The search-warrant application described both the February 22 incident involving the minor and Blessing's *Mirandized* statement to police, which established probable cause to search his home for computers and other electronic devices for evidence of pornographic images involving a minor. As detailed in the search-warrant application, Blessing texted a minor to come to his home. Blessing provided the minor alcohol and initiated conversation about "pedophilia" and "ephebophilia." The minor reported that Blessing made comments about the minor's body. Blessing's statements included, "that [the minor's] body was looking nice and [Blessing] can't wait to see what boot camp will do to [the minor's] body," and that Blessing wanted to "see the rest of [the minor's] body." Blessing squeezed the minor's shoulder and said, "you going to show me," and told the minor that "he could just close his eyes and pretend [Blessing] wasn't there." And later, in the car on the way to get

9

Blessing's truck, Blessing told the minor "that his wife would be in the hospital for a few days and . . . that [the minor] would really be helping him out by showing him," and asked the minor to text him about it. Blessing also reportedly told the minor "that he had felt this way about other kids before but never acted on it," and "just couldn't resist with [the minor]."

Following his arrest, Blessing stated in a *Mirandized* interview that he "does have interests in the post-pubescent young men" and agreed that he planned to ask the minor about his body and that there was no touching or video/photography. Blessing also stated that he has not acted on his feelings, other than pornography. But he admitted that "he does search out photos on the internet for young men," and while "[he] believed that the images are *supposedly* not underage," he confessed to "stor[ing] the images on his laptop," and searching a website "Gayboytube.com." (Emphasis added.)

When viewed in the totality, the facts provide a "fair probability" that pornographic work involving a minor would be found at Blessing's home and on his electronic devices. *Holland*, 865 N.W.2d at 673. Here, Blessing was originally investigated for criminal sexual conduct involving the minor based on his activities described above. And he admitted to having an interest in "post-pubescent young men," searching for photos of "young men" on the internet, frequenting a website that includes the word "boy," and storing images on his laptop. This court has recognized that "viewing and possessing child pornography is, by its nature, a solitary and secretive crime" and, based on an affiant's training and experience, "the court could reasonably draw an inference that the suspect would keep the illicit images in a place considered safe and secret, like the home."

10

*State v. Brennan*, 674 N.W.2d 200, 206 (Minn. App. 2004), *rev. denied* (Minn. Apr. 20, 2004). While Blessing's claimed belief "that the images are *supposedly* not underage" may make his conduct seem legal or innocent when viewed in isolation, we view this claim in light of the totality of the circumstances, including Blessing's request to see the minor's body. *See State v. Wiley*, 366 N.W.2d 265, 268 (Minn. 1985) (stating that even if each component, when viewed in isolation, is insubstantial to establish probable cause, "the components viewed together may reveal . . . an internal coherence that gives weight to the whole" (quotation omitted)). Taken as a whole, the facts set forth in the search-warrant application established a fair probability that evidence of the crime of felony possession of pornographic work involving a minor would be found on Blessing's computers or other electronic devices and therefore probable cause existed to support the search of Blessing's home for those devices.

We also note that the challenged warrant did not authorize an unrestricted search of Blessing's electronic devices. Here, law enforcement recognized in the search-warrant application that the "electronic devices located during [the execution of] the search warrant would require additional warrants prior to that item being searched." *See State v. McNeilly*, 6 N.W.3d 161, 177-78 (Minn. 2024) ("[A] warrant that authorizes seizure of a computer allows for a search of that computer, but only for the items otherwise listed in the warrant that reasonably may be found on the computer."). After searching for computers in Blessing's home and seizing those devices consistent with the initial search warrant, law enforcement properly sought and obtained additional warrants to search the seized devices. As mentioned above, these additional warrants were not challenged in district court.

11

In sum, based on the totality of the circumstances and affording the issuing judge deference, the initial search-warrant application established probable cause to search Blessing's home for electronic devices that could be used for storage of personal data related to possession of pornographic work involving a minor. Accordingly, the district court properly denied Blessing's motion to suppress.

**Affirmed.**