OPINION
GILDEA, Chief Justice.
The State charged appellant Debra Fawcett with criminal vehicular operation, Minn.Stat. § 609.21, subd. 1(2) (2012).[1] Fawcett moved to suppress “all evidence of the presence of drugs” found in her blood, arguing that the warrant application and supporting affidavit failed to provide a lawful basis to test her blood for controlled substances. The district court granted Fawcett’s suppression motion. The State filed a pretrial appeal challenging the district court’s suppression order. The court of appeals reversed. Because we conclude that the warrant application and supporting affidavit provided probable cause to believe that evidence of criminal vehicular operation would be found in Fawcett’s blood and because the warrant satisfies the Particularity Clause in the Fourth Amendment, we affirm.
On May 24, 2014, Fawcett drove her car through a highway intersection on a red light causing a collision with a car driven by L.S. When police officers arrived at the scene, they observed that L.S. was bleeding and likely had a broken leg or ankle. As they waited for medical personnel to arrive, one of the officers spoke with Faw-cett who had sustained minor injuries as a result of the crash. While interacting with Fawcett, the officers smelled alcohol on her breath, and Fawcett admitted that she had consumed “two to three beers” earlier. When the medical personnel arrived at the scene, they placed Fawcett on a stretcher and transported her to Mercy Hospital.
Meanwhile, a police detective applied for a warrant to search a sample of Fawcett’s blood for “evidence of the crime of criminal vehicular operation/homicide.” The warrant application and supporting affidavit alleged the following facts. At approximately 5:08 p.m. on May 24, 2014, officers from the Blaine Police Department responded to a motor vehicle crash at Highway 65 and 109th Avenue in the City of Blaine, Anoka County. One or more persons suffered bodily harm as a result of the crash, including “significant foot and ankle injuries and inability to move their leg[s].” “The victim and several witnesses placed Fawcett behind the wheel of a vehicle that ran a red light. Fawcett admitted *383 to the officers that she was driving and had been drinking prior to the crash.” “From their investigation, officers formed the belief that at the time of the collision ... Fawcett was the driver and was under the influence of alcohol.” “Fawcett admitted to responding officers that she had two or three drinks just prior to the crash, she smelled of an alcoholic beverage and it was apparent to officers on-scene that she had been drinking.” Based on the above-described facts, the detective sought “a blood sample of [Fawcett] as evidence of the crime of criminal vehicular operation/homicide.”
Incorporating the detective’s application and affidavit into the warrant by reference, the issuing judge found “probable cause exists for the issuance of a search warrant upon the following grounds: The property above-described constitutes evidence which tends to show a crime has been committed, or tends to show that a particular person has committed a crime.” The issuing judge also found that “due to the dissipation of alcohol/drugs in the human body this warrant may be served at anytime during the day or night.” Based on these findings, the judge issued a warrant that authorized the executing peace officer to “[c]ause a blood sample to be taken from [Fawcett] at Mercy Hospital” and “[fjorward said blood sample to an approved lab for testing.”
When the police detective arrived at the hospital with the signed warrant, Fawcett took a preliminary breath test (“PBT”) and a medical professional conducted a blood draw. The result of the PBT was a reading of .000. After the PBT, Fawcett told the officers that she was depressed and was currently taking Lorazepam and Wellbutrin.
One month later, on June 24, 2014, the police detective received a Bureau of Criminal Apprehension (“BCA”) report that stated that there was no ethyl alcohol in Fawcett’s blood sample. The report noted that “additional toxicology report(s) [would] follow.” The detective received a second BCA report on September 9, 2014. It indicated that Fawcett’s blood contained a metabolite of tetrahydrocannabinol (THC) and Alprazolam at the time of the accident.
On October 16, 2014, the State filed a complaint against Fawcett alleging that she had committed criminal vehicular operation in violation of Minn.Stat. § 609.21, subd. l(2)(ii) (2012). This statute makes it a crime to cause injury to another while operating a motor vehicle in a negligent manner while under the influence of a controlled substance.
Fawcett moved to suppress “all evidence of the presence of drugs,” arguing that the warrant application did not provide any basis for police to test her blood for controlled substances. The district court granted Fawcett’s suppression motion. Although the court determined that the blood sample was lawfully obtained under the warrant, it concluded that the subsequent testing of the blood sample for the presence of drugs was unlawful. As part of its analysis, the court said, tests of Fawcett’s blood were “limited in scope to the probable cause presented in the application and affidavit, namely, a search of [Fawcett’s] blood to obtain evidence of alcohol use.”
The State filed a pretrial appeal of the suppression order under Minn. R.Crim. P. 28.04, subd. 1(1). In its statement of the ease, the State asserted that the suppression order had a critical impact on its ability to prosecute because “[t]he test result demonstrating that [Fawcett’s] blood sample contained a controlled substance constitutes all of the state’s evidence to prove that [Fawcett] was under the influ- *384 enee of a controlled substance at the time of the crash.”[2]
The court of appeals reversed the suppression order, holding that Fawcett did not “retain[ ] privacy interests in the contents of her lawfully obtained blood sample,” so the subsequent chemical analysis for drugs was “not a distinct Fourth Amendment event.” State v. Fawcett, 877 N.W.2d 555, 561-62 (Minn.App.2016). We granted Fawcett’s petition for review.
On appeal, Fawcett does not argue that there was police misconduct or that the police did anything improper in executing the warrant. Rather, she argues that the warrant did not provide probable cause for the police to test her blood for controlled substances. Specifically, Fawcett notes that the warrant application sets forth the officer’s belief that she was under the influence of alcohol but does not mention controlled substances. According to Faw-cett, all of the facts alleged in the warrant application relate directly to alcohol intoxication and therefore the issuing magistrate was required to limit the testing to evidence of alcohol.' Fawcett also argues that the warrant to search her blood was over-broad because it allowed the police to search for more than the warrant application would otherwise allow, and that therefore, the warrant runs afoul of the Particularity Clause in the Fourth Amendment. We address each argument in turn.[3]
I.
We turn first to the question of whether the facts alleged in the warrant application and supporting affidavit supported testing Fawcett’s blood for controlled substances. The warrant authorized the police to seize Fawcett’s blood and forward it “to an approved lab for testing.” The warrant did not specify what type of testing, the blood would undergo. Because the warrant application referenced only the. influence of alcohol, Fawcett argues that the warrant application did not provide probable cause to test for controlled substances. We disagree.
When reviewing a judge’s decision to issue a search warrant, our only consideration’ is whether the issuing judge “had a substantial basis for concluding that probable cause existed.” State v. Rochefort, 631 N.W.2d 802, 804 (Minn.2001). Our review is limited to the information presented in the warrant application and *385 supporting affidavit. State v. Holland, 865 N.W.2d 666, 673 (Minn.2015). We must consider the totality of the circumstances alleged in the supporting affidavit and “must be careful not to review each component of the affidavit in isolation.” State v. Wiley, 366 N.W.2d 265, 268 (Minn.1985). The task of the issuing judge is
simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the “veracity” and “basis of knowledge” of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.
State v. Jenkins, 782 N.W.2d 211, 223 (Minn.2010) (quoting Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (emphasis, added)). We defer to the issuing magistrate, recognizing that “doubtful or marginal cases should be ‘largely determined by the preference to be accorded to warrants.’ ” State v. McCloskey, 453 N.W.2d 700, 704 (Minn.1990) (quoting United States v. Ventresca, 380 U.S. 102, 109, 85 S.Ct. 741,13 L.Ed.2d 684 (1965)); see State v. Bourke, 718 N.W.2d 922, 927 (Minn.2006) (“[W]e give ‘great deference to the issuing judge’s determination’ of probable cause for a search warrant.” (quoting State v. Jones, 678 N.W.2d 1, 11 (Minn.2004))); Rochefort, 631 N.W.2d at 804 (same); State v. Harris, 589 N.W.2d 782, 791 (Minn.1999) (“[T]he resolution, of doubtful or marginal cases should be ‘largely determined by the preference to be accorded warrants.’ ” (quoting Wiley, 366 N.W.2d at 268)).
Applying this well-established law to the facts of this case, we conclude that the facts alleged in the warrant application provided the issuing judge a substantial basis to conclude there was a fair probability that evidence of criminal vehicular operation. would be found in Fawcett’s blood. A person is .guilty of criminal vehicular operation if the person causes injury to another as a result of operating a motor vehicle in a negligent manner while under the influence of: “(i) alcohol; (ii) a-controlled substance; or (iii) any combination of those elements;” Minn.Stat,. § 609.21, subd. 1(2) (2012). Considering all the circumstances set forth in the warrant application and supporting affidavit,- including L.S.’s ■ visible injuries, the eyewitness’s placement of Fawcett behind the wheel of a vehicle that ran a red 'light, the odor of alcohol On Fawcett’s breath, the officers’ conclusion that she had been drinking, and Fawcett’s admission that she had been drinking prior to the crash, the issuing judge had a substantial basis to conclude there was a fair probability that evidence of intoxicants, whether alcohol, controlled substances, or a combination of alcohol and controlled substances would be found in Fawcett’s blood.
We acknowledge that the warrant application and supporting affidavit states that “From their investigation, officers formed the belief that at the time of the collision ... Fawcett was the driver and was under the influence of alcohol.” But because the prime function of the, warrant requirement is. to secure “an independent assessment of the inferences to be drawn from, the' available evidence,” see State v. Nolting, 312 Minn. 449, 452, 254 N.W.2d 340, 343 (1977), it is axiomatic that an issuing judge is not -bound by the inferences drawn by the officers. And the issuing judge is free “to draw such reasonable inferences as he will from the materials supplied to him by applicants for a warrant.” Gates, 462 U.S. at 240, 103 S.Ct. 2317.
From the warrant application, the issuing judge knéw that it was “apparent” to the officers at the scene that Fawcett *386 was under the influence, a conclusion based- on the officers’ investigation at the scene including what they saw and heard from Fawcett. Because it was “apparent” to those officers that Fawcett was impaired, it was not unreasonable for the issuing judge to infer that Fawcett’s impairment may have been caused by alcohol, controlled substances, or some combination of the two. This is especially true when a warrant application “need not contain .information providing certainty that the objects sought will be found as a result of the search.” United States v. Maestas, 546 F.2d 1177, 1180 (5th.Cir.1977).
Given the deference that we afford issuing magistrates and considering the totality of the circumstances here, including the fact that Fawcett drove her car through a red light, causing- an accident,[4] and that she appeared to the officers on-the scene to be under the influence, we cannot say that it was unreasonable for the issuing magistrate to choose not to limit the testing of Fawcett’s blood to evidence of only one type of-intoxicant — alcohol.[5]
II.
We next turn to Fawcett’s argument that the search authorized by the warrant was overbroad because it allegedly “failed to provide the safeguards that the Particularity Clause was intended to provide: prevent general searches, and assure the person being searched of the officer’s lawful authority, the need to search, and the search’s limits.” According to Fawcett, the warrant’s use of the phrase “[forward said sample to an approved lab *387 for testing” allowed a general search of her blood, which she claims is particularly-troubling in light of “[t]he ever-increasing knowledge about what blood contains— e.g., DNA, indicators of diseases, conditions or exposure to certain substances, and the person’s entire genome.... ”
The Particularity Clause of the Fourth Amendment requires that a search warrant particularly describe the items to be seized. U.S. Const, amend. IV. “This requirement prohibits law enforcement from engaging in general or exploratory searches.” State v. Bradford, 618 N.W.2d 782, 795 (Minn.2000). The Supreme Court has recognized that “[t]he Fourth Amendment by its terms requires particularity in the warrant) not in the supporting documents.” Groh v. Ramirez, 540 U.S. 551, 557, 124 S.Ct. 1284, 157 L.Ed,2d 1068 (2004). A court may, however, “construe a warrant with' reference to a supporting application or affidavit if the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant.” Id. at 557-58, 124 S.Ct. 1284. And “when determining whether a clause in a search warrant is sufficiently particular, the circumstances of the case must be considered, as well as the nature of the crime under investigation and whether a more precise description is possible under the circumstances.” State v. Miller, 666 N.W.2d 703, 713 (Minn.2003).
Applying these principles in State v. Hannuksela, we concluded that although “an authorization permitting search for items belonging to Arthur Nelson [was] somewhat vague,” it “met minimal constitutional standards” because “the officers did not definitely know all of the circumstances surrounding' Nelson’s disappearance although they were then in possession of sufficient facts to establish ... that he was the victim of foul play and that appellant was involved.” 452 N.W.2d 668, 674 (Minn.1990). We reached a similar conclusion in State v. Poole, 499 N.W.2d 31, 34 (Minn.1993) (concluding that an authorization permitting the search of “[c]omplete patient files of all females with dates of birth between January 1,1965 and January 1, 1978 who saw Dr. Poole from January 1, 1987 to the present for any kind of family practice services” was sufficiently particular because “the nature of the activity under investigation did not permit investigative authorities complete knowledge of even the total number of victims”),,
■ Having considered the circumstances of the case, as well as the nature of the crime under investigation and whether a mófe precise description was possible under the circumstances, we conclude that the authorization to submit Fawcett’s blood sample “to an approved lab for testing” meets minimal constitutional standards for particularity. Like the investigators in Han-nuksela and Poole, the detective in this case was in possession- of facts that established probable cause to. believe evidence of criminal • vehicular operation would be found in Fawcett’s blood, although he did not know whether the intoxicant was alcohol, controlled substances, or a combination of alcohol and controlled substances. Moreover, by expressly incorporating the warrant application and supporting affidavit into the warrant, the issuing judge limited the search of Fawcett’s blood to tests that would reveal “evidence of the crime of criminal vehicular operation/homicide.” Under Minn,Stat. § 609.21, subd. 1(2) (2012), such evidence is narrowly limited to the presence‘of alcohol and/or controlled substances. Contrary to Fawcett’s assertion, the search warrant in this case did not authorize general testing of Faw-cett’s blood to determine her DNA, genome, or indicators of diseases because such testing would not have revealed any *388 evidence of criminal vehicular operation/homicide. We therefore hold that the search warrant satisfies the Particularity Clause in the Fourth Amendment.
Affirmed.

. In 2014, the Legislature renumbered section 609.21, subd. 1 (2012), to include Minn.Stat. § 609.2113, subd. 2(2). Act of Apr. 30, 2014, ch. 180, § 7, 2014 Minn. Laws 281, 285.

. The parties do not contend that the critical impact test is not met in this appeal. We agree that the standard is met. See State v. Stavish, 868 N.W.2d 670, 674 (Minn.2015) (“[C]ritical impact is established if the exclusion of evidence would prevent the State from successfully prosecuting one of the specific charges.”).

. Fawcett also argues that the court of appeals erred in concluding that once her blood was seized pursuant to a warrant, she no longer had an expectation of privacy in the blood. We agree with Fawcett that she did not lose all expectation of privacy in her blood that was seized pursuant to a warrant . and that the court of appeals’ rule is too broad. As the United States Supreme Court observed in Skinner v. Ry. Labor Execs’ Ass’n, 489 U.S. 602, 617, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989), chemical analysis of blood "can reveal a host of private medical facts ... including whether [a person] is epileptic, pregnant, or diabetic.” See also Birchfield v. North Dakota, — U.S. —,-, 136 S.Ct. 2160, 2177, 195 L.Ed.2d 560 (2016) (noting that blood contains "a wealth of ... highly personal information.”). At oral argument, the State did not defend the court of appeals’ broad rule. Rather, the State contended that Fawcett lost her expectation of privacy in the information that could be gleaned from her blood sample through chemical testing of the blood. We need not resolve in this case the exact extent of the expectation of privacy Fawcett retained in' her blood because, as explained below, we conclude that the warrant provided a valid basis for the controlled substance testing.

. , Fawcett’s driving conduct supports a finding of probable cause to believe she was under the influence of intoxicants. See State v. Paul, 548 N.W.2d 260, 264 (Minn.1996) (explaining that the defendant’s driving conduct, including rolling through several stop signs, supported a finding of probable cause to believe the defendant was under the influence of an intoxicant).

. The dissent contends that our conclusion is based solely on the supporting affidavit’s statement that law enforcement sought "evidence of the crime of criminal vehicular operation/homicide,” and therefore is contrary to existing precedent, including Gates, 462 U.S. at 239, 103 S.Ct. 2317 and State v. Souto, 578 N.W.2d 744, 749 (Minn.1998). Infra at D-5. We disagree. The cases cited by the dissent involve argumentative assertions -that were not supported by any alleged facts. For example, in Gates, 462 U.S. at 239, 103 S.Ct. 2317, the Court identified the following "bare bones” warrant affidavit as being too conclu-sory, . "A sworn statement of an affiant that 'he has cause to suspect and does believe’ that liquor illegally brought into the United States is located on certain premises.” Id. at 239, 103 S.Ct.- 2317 (describing the affidavit in Nathanson v. United States, 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159 (1933)). The Court in Gates explained that the affiant needed to allege facts that would allow the magistrate to determine probable cause. Gates, 462 U.S. at 239, 103 S.Ct, 2317. The Court went on to emphasize that "when we move beyond the 'bare bones’ affidavits” a flexible common sense rule applies, which allows a "magistrate to draw such reasonable inferences as he will from the material supplied to him by applicants for a warrant.” Id. at 239-40, 103 S.Ct. 2317.
Similarly, in Souto, the issue was whether the affiant’s statement that “he [knew] that Souto was involved in the possession and/or distribution of drugs on a wide scale was too vague and conclusory to bolster the state’s position that Souto was a drug dealer.” 578 N.W.2d at 749. Wé concluded that it was too vague because the officer failed to provide a detailed description of the information that led to such knowledge.
Our analysis is not based solely on the supporting affidavit’s statement that law enforcement sought "evidence of the crime of criminal vehicular operation/homicide.” Instead, it is based on specific facts, including the injuries, running of the red light, odor of alcohol, Fawcett’s admission that she had been drinking, and the officers’ belief that Fawcett was under the influence. Contrary to the dissent’s assertion, our. analysis is neither speculative nor inconsistent with existing precedent.