*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0121**

State of Minnesota,
Respondent,

vs.

Justin Thomas Keodouangdy,
Appellant.

**Filed December 27, 2016
Affirmed
Rodenberg, Judge**

Carver County District Court
File No. 10-CR-15-37

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Mark Metz, Carver County Attorney, Dave Hunt, Assistant County Attorney, Alexander Vian, Special Assistant County Attorney, Chaska, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Leslie J. Rosenberg, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Halbrooks, Presiding Judge; Rodenberg, Judge; and Kirk, Judge.

## UNPUBLISHED OPINION

**RODENBERG**, Judge

        On appeal from his conviction of aiding and abetting burglary in the second degree, appellant Justin Thomas Keodouangdy challenges the validity of the search warrants

authorizing the search of a cell phone, residence, and SUV. Appellant also argues that he is entitled to a new trial because the district court plainly erred by failing to instruct the jury concerning the term "intentionally aiding" and in failing to give an accomplice-liability instruction. We affirm.

**FACTS**

In January 2015, the home of P.M., W.M., and B.K. was burglarized. The morning of the burglary, appellant contacted P.M. and offered her a ride to the mall. He came to the house to get P.M. Before they left, he went downstairs and remained there for several minutes.

Appellant drove to the mall in a black SUV. P.M. saw appellant with his phone at the mall and saw him receive a text message. After appellant returned P.M. to her home, P.M. noticed that items were missing from the home. She believed someone had entered without permission. Footprints were located in the snow outside the house and led to the basement door, which was normally kept locked. P.M. exchanged text messages with appellant asking whether he had seen the missing items and accusing him of letting someone into the house through the basement door. P.M. later received text messages from an unknown number asking for money in return for the items that had been stolen from the home.

Police investigated the burglary and later broadcast a "stop and hold" for appellant. An officer located and stopped an SUV that matched the description of the SUV that appellant had been driving on the day of the burglary. The officer spoke to the driver and, in doing so, noticed an envelope with appellant's name on it within the SUV. The driver

2

informed the officer that appellant was at the residence he had just left, and that appellant had been living there. Police went to the home, took another resident of the home to the police station, and this person then gave police appellant's cellular phone.

A search warrant was obtained authorizing police to search that residence and the SUV. Items taken during the burglary were found in both the residence and the SUV. A search warrant was also issued for "all electronic data contained on" appellant's phone. The search of the contents of the cell phone revealed a series of text messages sent and received by appellant before, during, and after the burglary, implicating appellant in the crime, including texts from appellant to an accomplice describing where to find valuables in the house. Appellant challenged the issuance of the search warrants without making specific arguments to the district court. The district court found that the affidavits in support of the warrants contained sufficient facts and circumstances to establish probable cause for the issuance of the search warrants. Appellant made no further or more specific challenge to the warrants.

A jury returned a guilty verdict on the charge of aiding and abetting burglary in the second degree. This appeal followed.

**D E C I S I O N**

**I.      Warrant authorizing the search of the cell phone**

Appellant argues that the search warrant authorizing the search of his cell phone violated the particularity clause of the Fourth Amendment to the U.S. Constitution and article I, section 10 of the Minnesota Constitution. He also challenges the district court's probable cause determination concerning that search warrant.

**A.** *Appellant failed to preserve a particularity challenge.*

Generally, appellate courts will only consider issues that were presented and considered below. *In re Stadsvold*, 754 N.W.2d 323, 327 (Minn. 2008); *Thiele v. Stich*, 425 N.W.2d 580, 582-83 (Minn. 1988) ("An appellate court may not base its decision on matters outside the record on appeal, and may not consider matters not produced and received in evidence below.").

The record before us does not indicate that appellant argued to the district court that the warrant authorizing the search of his cell phone violated the particularity clause. The district court did not make findings concerning the particularity of the search warrant. At the omnibus hearing, appellant's only argument concerning the search of the cell phone was "whether the search warrant was proper to obtain the cell phone and to search the cell phone." Appellant made no further argument, and the district court's only conclusion in response to appellant's challenge was a finding of probable cause. Appellant made no later or further request that the district court consider whether the warrant was sufficiently particular. Because the district court was not asked to make a particularity finding, the record is inadequate to determine whether the description of the scope of the cell-phone search contained in the warrant was insufficiently precise or particular. For example, there is no evidence of how and where on the cell phone's drive or memory the text messages are or would generally be stored. Likewise, and although the warrant's description of the property and things to be searched was quite general, the record contains neither evidence nor argument concerning how it might or should have been made more specific. This hinders our review of whether the warrant was unconstitutionally broad. *See Eisenschenk*

4

*v. Eisenschenk*, 668 N.W.2d 235, 243 (Minn. App. 2003) ("A party cannot complain about a district court's failure to rule in [the party's] favor when one of the reasons it did not do so is because that party failed to provide the district court with the evidence that would allow the district court to fully address the question."), *review denied* (Minn. Nov. 25, 2003). Although the state did not argue that the particularity challenge was forfeited, there is no basis in the record before us on which we can evaluate the issue. We therefore conclude that appellant failed to preserve the particularity challenge and the issue is forfeited.

We nevertheless address on the merits the constitutionality of the cell-phone search warrant for both probable cause and particularity. Our merits consideration of the latter issue is constrained by the record as it exists.

### B. *Probable cause supports the cell-phone search.*

Appellant argues that the search warrant authorizing the search of the contents of his cell phone is not supported by probable cause. He argues that his "mere possession of a cell phone" as a suspect is "insufficient to establish probable cause to search the contents." The state argues that the police would "be interested in knowing" certain information within appellant's phone. Police officers are undoubtedly curious about all sorts of things, including data contained within a suspect's cell phone. But curiosity is not a proper basis for the issuance of a search warrant. Rather, the search warrant application and supporting affidavit must demonstrate that "a fair probability" exists that evidence or fruits of crime will be found in the place to be searched. *State v. Holland*, 865 N.W.2d 666, 673 (Minn. 2015) (quotations omitted).

5

A search warrant is supported by probable cause "if, on the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Holland*, 865 N.W.2d at 673 (quotations omitted). We give great deference to the district court's determination of probable cause for a search warrant. *State v. Rochefort*, 631 N.W.2d 802, 804 (Minn. 2001) "When reviewing a judge's decision to issue a search warrant, our only consideration is whether the issuing judge had a substantial basis for concluding that probable cause existed." *State v. Fawcett*, 884 N.W.2d 380, 384 (Minn. 2016) (quotation omitted). Our review is limited to the information within the warrant application and supporting affidavit. *Holland*, 865 N.W.2d at 673. The warrant application and supporting affidavit must include "specific facts to establish a direct connection between the alleged criminal activity and the site to be searched." *State v. Souto*, 578 N.W.2d 744, 749 (Minn. 1998). In our review, "[w]e must consider the totality of the circumstances alleged in the supporting affidavit and must be careful not to review each component of the affidavit in isolation." *Fawcett*, 884 N.W.2d at 385 (quotation omitted).

We conclude that the affidavit supporting the warrant application contained sufficient information to establish a connection between the suspected burglary and the data contained within appellant's cell phone. The affidavit describes appellant's interactions with P.M. on the day of the burglary, including appellant's invitation to transport P.M. from the house to the mall, P.M.'s observation that appellant had been in the basement of the house where the door by which the burglar(s) obtained entry is located, and P.M.'s observation that appellant had used his cell phone during the approximate time

6

of the burglary. The affidavit also notes that a search warrant had already been executed at appellant's residence, and property stolen from P.M.'s home was recovered. From the information within the affidavit, there was a fair probability that evidence of appellant's involvement in the burglary would be revealed by his text messages. We defer to the issuing judge's determination that there was probable cause to think that appellant's cell phone would reveal evidence of a crime. The warrant to search the contents of appellant's cell phone was supported by probable cause.

## C. *The record is insufficient to demonstrate a particularity-clause violation.*

The Fourth Amendment to the U.S. Constitution and article I, section 10 of the Minnesota Constitution provide that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV; Minn. Const. art. I, § 10. The particularity clause prevents "general or exploratory" searches, *State v. Bradford,* 618 N.W.2d 782, 795 (Minn. 2000), and "prevents the seizure of one thing under a warrant describing another," *Marron v. United States*, 275 U.S. 192, 196, 48 S. Ct. 74, 76 (1927). A warrant written with particularity has the effect that, "[a]s to what is to be taken, nothing is left to the discretion of the officer executing the warrant." *Id.* "[A] search conducted pursuant to a warrant that fails to conform to the particularity requirement . . . is unconstitutional." *Massachusetts v. Sheppard*, 468 U.S. 981, 988 n.5, 104 S. Ct. 3424, 3427 n.5 (1984). "[W]hen determining whether a clause in a search warrant is sufficiently particular, the circumstances of the case must be considered, as well as the nature of the

7

crime under investigation and whether a more precise description is possible under the circumstances." *State v. Miller*, 666 N.W.2d 703, 713 (Minn. 2003).

We recently examined a particularity clause challenge in an unpublished opinion in *State v. Bachman*, No. A14-0996, 2015 WL 46547 (Minn. App. Jan. 5 2015).[1] In *Bachman*, a search warrant was issued for the search of "any and all data on [the] hard drive" of a computer owned by Bachman, for the purpose of finding photos of a house destroyed by a fire and communications made by a victim of the fire who had used the computer. *Id.* at *1. In the ensuing search, child pornography was found. *Id.* The district court suppressed the child-pornography evidence. *Id.* We affirmed on the ground that the search warrant for "any and all data on [the] hard drive" did not adequately limit the scope of the warrant to the probable-cause showing contained in the supporting affidavit. *Id.* at *1, *3.

This case is unlike *Bachman*. The warrant in this case was issued to search appellant's cell phone for text messages and other communications surrounding the time of the burglary. Those communications were the focus of the forensic examiner's search of the cell phone. And those electronic communications were precisely what the examiner's search ultimately found. Although the search warrant's description of the particular "place to be searched" and "things to be seized" was broad, the record before us

---

[1] "Although not precedential, unpublished opinions may be persuasive." *Sarber v. Comm'r of Pub. Safety*, 819 N.W.2d 465, 469 n.3 (Minn. App. 2012). Because this is an emerging issue in the area of search-and-seizure law, and because *Bachman* is a recent opinion of this court, we consider its persuasive value here.

does not disclose how the portions of the cell phone authorized to be searched could have been more precisely described.[2]

The officers in this case acted under what United States Supreme Court precedent requires for the search of a cell phone; they applied for and received a warrant authorizing a search of the cell phone. *Riley v. California*, 134 S. Ct. 2473, 2495 (2014) ("Our answer to the question of what police must do before searching a cell phone seized incident to an arrest is accordingly simple—get a warrant."); *see also State v. Barajas*, 817 N.W.2d 204, 217 (Minn. App. 2012) (holding that a search warrant is required for a search of a cell phone), *review denied* (Minn. Oct. 16, 2012). The legality of a search of all data contained within a cell phone, without limitation, is an emerging area of the law where clarification is needed,[3] but the record here does not permit meaningful review of the issue because appellant presented neither evidence nor argument to the district court concerning how the warrant could have been made more particular. *See Miller*, 666 N.W.2d at 713 (noting that part of the test for particularity is whether a more precise description is possible). Appellant has not demonstrated either that he has been aggrieved by the claimed lack of particularity of the search warrant, or that he is entitled to appellate relief.

---

[2] We suppose that the warrant might have been tailored more narrowly so as to only authorize search of those portions of the phone's memory that contain text messages. But here again, the record is silent concerning where on a cell phone's memory or disc such things might ordinarlily be found. The record is also silent concerning how the retention of text-message data is or might be separated from other stored data.

[3] The state argues that, if the warrant violated the particularity clause, a good-faith exception would apply. We do not reach the state's alternative argument.

## II.      Warrant for the search of the SUV and the residence

Appellant challenges the probable-cause determination supporting the search warrant issued for the searches of the SUV and the residence where he was living.[4]

A search warrant is supported by probable cause if the totality of the circumstances demonstrate that there is "a fair probability that contraband or evidence of a crime will be found in a particular place." *Holland*, 865 N.W.2d at 673 (quotation omitted). The facts alleged in the warrant application and affidavit must include "specific facts to establish a direct connection between the alleged criminal activity and the site to be searched." *Souto*, 578 N.W.2d at 749. We defer to the issuing judge's determination of probable cause for the search warrant and only consider whether the issuing judge had a substantial basis for concluding that probable cause existed. *Fawcett*, 884 N.W.2d at 384; *Rochefort*, 631 N.W.2d at 804.

The facts alleged in the affidavit supporting the request for the warrant to search the SUV and residence indicate that appellant had used the SUV sought to be searched to transport P.M. from her home to the mall, and then back to the burglarized residence. The affidavit alleges that P.M. believed appellant had unlocked the basement door or let someone into the home when he went to the basement, and footprints in the snow near the door corroborated this belief. Appellant was later seen returning to the residence carrying a duffle bag. Under the totality of the circumstances, there was a fair probability that

---

[4] The state asserts that appellant did not have a legitimate expectation of privacy in the SUV and therefore has no right to challenge the search. Because we conclude that probable cause supports the issuance of the search warrant for the SUV, we do not address the state's legitimate-expectation-of-privacy argument.

contraband or evidence of the burglary would be found in the residence and SUV. A direct connection existed between the facts alleged in the affidavit and the two areas to be searched listed in the warrant. The issuing judge had a substantial basis to make the probable-cause decision concerning the search of the SUV and residence, and we do not disturb that determination. *See Rochefort*, 631 N.W.2d at 804 (directing that this court gives great deference to the issuing judge's finding of probable cause). The warrant authorizing the searches of the residence and the SUV was supported by probable cause.

## III. Aiding and Abetting Instruction

Appellant next argues he is entitled to a new trial because the district court plainly erred by failing to instruct the jury on "intentionally aiding."

Appellant did not object to the absence of such an instruction at trial. We therefore review for plain error. *State v. Washington-Davis*, 881 N.W.2d 531, 541 (Minn. 2016). Under the plain-error doctrine, we determine whether the jury instructions: (1) contained an error, (2) that was plain, and (3) that affected the defendant's substantial rights. *Id.* If all three prongs of the plain-error analysis are satisfied, "we may correct the error only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (quotation omitted).

A person is "liable for a crime committed by another if the person intentionally aids, advises, hires, counsels, or conspires with or otherwise procures the other to commit the crime." Minn. Stat. § 609.05, subd. 1 (2014). To conclude that a person intentionally aided another in the commission of a crime, the state must prove "(1) that the defendant knew that his alleged accomplices were going to commit a crime, and (2) that the defendant

11

intended his presence or actions to further the commission of that crime." *State v. Milton*, 821 N.W.2d 789, 805 (Minn. 2012) (quotation omitted). Accomplice-liability instructions must explain that the intentionally-aiding element requires the jury to find beyond a reasonable doubt that the defendant had foreknowledge that his accomplice was going to commit a crime, and the defendant intended his actions or presence to aid in the commission of the crime. *State v. Kelley*, 855 N.W.2d 269, 274 (Minn. 2014).

The state concedes that the district court plainly erred in not instructing the jury concerning "intentionally aiding." It remains for us to determine whether that plain error affected appellant's substantial rights. One claiming that an erroneous instruction affected substantial rights has the "heavy burden of proving that there is a reasonable likelihood that giving the instruction in question had a significant effect on the jury verdict." *Id.* at 284 (quotation omitted). "An erroneous jury instruction will not ordinarily have a significant effect on the jury's verdict if there is considerable evidence of the defendant's guilt." *Id.* at 283-84.

Appellant has not met the heavy burden of demonstrating that the omission of the jury instruction had a significant effect on the verdict in this case. "Intentionally" is a commonly understood word, and the district court ensured that the jury would consider whether appellant's aid was intentional by including the term in the jury instruction concerning liability for the crimes of another, in the jury instruction for aiding and abetting burglary, and on the jury verdict form itself. The record contains ample evidence that appellant knew that his accomplice was going to commit the burglary, and that appellant intended his actions of removing P.M. from the home to aid in the commission of that

crime.  Appellant initiated the contact with P.M. that would remove her from the home, sent text messages describing where the accomplice should look for valuables within the home and when the accomplice should leave the house, and the stolen items were eventually recovered from where appellant was living.  After our careful review of the record, we are convinced that an additional instruction on "intentionally aiding" would not have had a significant effect on the verdict.  The district court's error concerning the jury instruction did not affect appellant's substantial rights.

## IV.    Accomplice-Liability Instruction

Finally, appellant argues that the district court committed plain error by failing to instruct the jury concerning accomplice-liability testimony.

District courts must instruct juries on accomplice testimony when "it is reasonable to consider any witness against the defendant to be an accomplice." *State v. Strommen*, 648 N.W.2d 681, 689 (Minn. 2002).  The duty to give the jury instruction "arises from the very real possibility that a jury might discredit all testimony except the accomplice testimony, and thus find the defendant guilty on the accomplice testimony alone." *State v. Cox*, 820 N.W.2d 540, 548 (Minn. 2012) (quotations omitted).

Appellant did not request an accomplice-testimony instruction at trial.  We therefore review the omission of the jury instruction for plain error. *Washington-Davis*, 881 N.W.2d at 541.  An accomplice is a witness who "could have been indicted and convicted for the crime with which the defendant is charged." *State v. Pendleton*, 759 N.W.2d 900, 907 (Minn. 2009) (quotation omitted).  No accomplice testified as a witness against appellant during the trial.  The only witnesses who testified at trial were victims of the burglary and

law enforcement personnel.  Because an accomplice did not testify as a witness, appellant has not demonstrated error in the omission of an accomplice-liability instruction, much less plain error.

To the extent appellant argues that the text messages admitted into evidence required an accomplice-testimony instruction, this argument is contrary to the purpose of such an instruction.  Accomplice testimony is inherently untrustworthy because of the risk that the accomplice may testify in the hope of currying favor with law enforcement or to satisfy self-serving or malignant motives, and therefore a jury instruction is required.  *State v. Clark*, 755 N.W.2d 241, 253 (Minn. 2008).  Without an accomplice providing actual trial testimony, there is no reason to give an accomplice-liability instruction.  Appellant was not entitled to an accomplice-testimony instruction.

**Affirmed.**