*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-0927**

State of Minnesota,
Respondent,

vs.

Jennifer Lynn Nagle,
Appellant.

**Filed June 10, 2024**
**Affirmed**
**Larkin, Judge**
**Dissenting, Frisch, Judge**

Swift County District Court
File No. 76-CR-22-90

Keith Ellison, Attorney General, Peter Magnuson, Assistant Attorney General, St. Paul, Minnesota; and

Danielle Olson, Swift County Attorney, Benson, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Adam Lozeau, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Larkin, Presiding Judge; Bratvold, Judge; and Frisch, Judge.

**NONPRECEDENTIAL OPINION**

**LARKIN**, Judge

Appellant was convicted of third-degree possession of a controlled substance after police executed a search warrant at her home and found methamphetamine. Appellant

challenges her conviction, arguing that the search warrant was not supported by probable cause. We affirm.

## FACTS

On March 10, 2022, at 8:07 a.m., a police officer applied for a warrant to search appellant Jennifer Lynn Nagle's home for drugs, drug paraphernalia, and other evidence of drug possession. As support for the warrant, the officer submitted an affidavit stating in part:

> On March 10th, 2022, your Affiant was contacted by a Confidential Reliable Informant or C.R.I. who stated that within the last 72 hours, they had been over to [the residence address] and had observed meth pipes inside the house and people smoking meth. The C.R.I. was not directed by law enforcement to go to this residence and did so on their own. This particular C.R.I. has been working for the Task Force since February 2022 and is working for monetary consideration. The C.R.I. has an intimate knowledge of the controlled substances community and has been arrested for controlled substance violations in the past. The C.R.I. has provided [the task force] reliable information and performed multiple controlled buys for the task force for controlled substances.[1]

At 8:23 a.m., the district court issued a warrant to search the residence, and the police executed the warrant that afternoon. The police found drug paraphernalia and methamphetamine in Nagle's home, arrested Nagle and another resident, and took two children into protective custody.

---

[1] The affidavit also stated that a person with a "long history of controlled substance crimes" and three active warrants was stopped by police "at the residence" on January 11, 2022. The district court did not rely on this information in making its probable-cause determination.

Respondent State of Minnesota charged Nagle with third-degree possession of methamphetamine in a school zone under Minn. Stat. § 152.023, subd. 2(a)(6) (2020), and storing methamphetamine paraphernalia in the presence of a child or vulnerable adult under Minn. Stat. § 152.137, subd. 2(a)(4) (2020). Nagle moved to suppress evidence obtained as a result of the search warrant, asserting that the "informant's account [was] not credible" and that the warrant was therefore not supported by probable cause. The district court denied Nagle's motion to suppress. Subsequently, a jury found Nagle guilty of both offenses. The district court entered judgment of conviction and sentenced Nagle for third-degree controlled-substance possession.

Nagle appeals.

**DECISION**

Nagle challenges the district court's denial of her motion to suppress, arguing that the district court erroneously concluded that probable cause supported a warrant to search her residence for drugs.

Both the United States and Minnesota constitutions protect against "unreasonable" searches by the state. U.S. Const. amend. IV; Minn. Const. art. I, § 10. "Generally, searches conducted outside of the judicial warrant process are per se unreasonable." *State v. Munson*, 594 N.W.2d 128, 135 (Minn. 1999). "Before searching a residence, police usually must obtain a valid warrant issued by a neutral and detached magistrate." *State v. Yarbrough*, 841 N.W.2d 619, 622 (Minn. 2014). A valid warrant is one supported by probable cause. *Id.*; *see* U.S. Const. amend. IV; Minn. Const. art. I, § 10; Minn. Stat. § 626.08 (2022). Probable cause exists if the issuing magistrate determines that "there is a

fair probability that contraband or evidence of a crime will be found" in the place to be searched. *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

When reviewing a magistrate's probable-cause determination, an appellate court reviews the warrant application and supporting affidavits to determine whether the magistrate had a substantial basis to conclude that probable cause existed. *State v. Fawcett*, 884 N.W.2d 380, 384-85 (Minn. 2016). In doing so, we apply the "totality of the circumstances" test:

> [T]he magistrate's task is "simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."

*State v. McCloskey*, 453 N.W.2d 700, 702-03 (Minn. 1990) (quoting *Gates*, 462 U.S. at 238).

We do not apply the totality-of-the-circumstances test de novo. Instead, "[w]e defer to the issuing magistrate, recognizing that doubtful or marginal cases should be largely determined by the preference to be accorded to warrants." *Fawcett*, 884 N.W.2d at 385 (quotations omitted). As explained by the U.S. Supreme Court:

> If the affidavits submitted by police officers are subjected to the type of scrutiny some courts have deemed appropriate, police might well resort to warrantless searches, with the hope of relying on consent or some other exception to the Warrant Clause that might develop at the time of the search. In addition, the possession of a warrant by officers conducting an arrest or search greatly reduces the perception of unlawful or intrusive police conduct, by assuring the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his

4

power to search. Reflecting this preference for the warrant process, the traditional standard for review of an issuing magistrate's probable-cause determination has been that so long as the magistrate had a substantial basis for concluding that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more. We think reaffirmation of this standard better serves the purpose of encouraging recourse to the warrant procedure and is more consistent with our traditional deference to the probable cause determinations of magistrates . . . .

*Gates*, 462 U.S. at 236-37 (quotations and citations omitted) (adopting the totality-of-the-circumstances test).

The Minnesota Supreme Court recently reiterated these constitutional principles in *State v. Wiggins*, a case involving a search warrant based on information from a confidential informant. 4 N.W.3d 138, 149 (Minn. 2024). The *Wiggins* court stated that when an appellate court "perform[s] a totality of the circumstances analysis on a warrant application," it defers "to the issuing magistrate, recognizing that doubtful or marginal cases should be largely determined by the preference to be accorded to warrants." *Id.* at 145-46 (quotation omitted).

The *Wiggins* court also noted that "in cases involving an informant, whether the warrant application establishes probable cause to search depends on the totality of the circumstances of the particular case, *including* the credibility and veracity of the informant." *Id.* at 149 (quotation omitted). As is relevant here, the *Wiggins* court stated that the reliability of a confidential reliable informant (CRI) is presumed, explaining:

Multiple factors determine whether informants are reliable. Two such factors are whether the informant is a CRI or a first-time citizen informant, *both of whom are presumed to be reliable*. A CRI is a distinct type of informant

5

> characterized by a proven track record of accurate tips, but reliability is presumed only if a CRI is designated as such in the warrant application. Similarly, a warrant application must explicitly designate a first-time citizen informant as someone not part of the criminal milieu for presumed reliability.

*Id.* (emphasis added) (quotation and citations omitted).

Nagle argues that the district court erred in finding probable cause, in part because

> [t]here was nothing corroborating the informant's claim. There was also no information about the informant's track record of reliability other than the affidavit's conclusory statement that the informant "has provided [the task force] reliable information." This affidavit was insufficient for the magistrate to reach an independent conclusion that the informant's tip was reliable and, since the application was based on nothing more than the informant's claim, the warrant was not supported by probable cause.

Nagle's briefing does not focus on caselaw addressing the particular circumstances of this case, that is, a judicial determination of probable cause for a search warrant based on a CRI's tip. Instead, she relies on cases that are readily distinguishable. For example, she heavily relies on *State v. Mosley*, in which the supreme court found probable cause for a *warrantless* automobile search based on a CRI's "past reliability, personal observations, and police corroboration of some of the details in the tip." 994 N.W.2d 883, 893 (Minn. 2023). The fact that *Mosley* involved a warrantless search is significant because in that circumstance, an appellate court does not apply the deferential standard of review that applies when the police obtain a warrant before searching. Instead, the reviewing court makes its own probable-cause determination. *See id.* at 889. ("We review probable cause as it relates to warrantless searches de novo." (quotation omitted)).

6

Nagle also relies on *Gates*, in which the Supreme Court found probable cause for a search warrant based on an *anonymous* tip, reasoning that major portions of the tip were corroborated. 462 U.S at 243-46. Lastly, Nagle cites *State v. Causey*, in which the Minnesota Supreme Court found that a search warrant was supported by probable cause because corroborating information contained in a search-warrant affidavit provided a substantial basis for crediting an *unidentified* informant's tip. 257 N.W.2d 288, 289 (Minn. 1977).

This case does not involve a magistrate's probable-cause determination based on an anonymous tip or an unidentified informant. In those circumstances, corroboration may be necessary to establish the credibility and veracity of the tipster or informant. But in this case, the magistrate's probable-cause determination was based on information provided by a CRI, who, by definition, is *presumed* to be reliable. *See Wiggins*, 4 N.W.3d at 149 (stating that a first-time citizen informant and a CRI are both "presumed to be reliable").

Again, a CRI's reliability is presumed only if the CRI is designated as such in the warrant application, as is the case here. *Id.* Moreover, the warrant applicant must provide some information regarding the CRI's past history of providing reliable information because "[h]aving a proven track record is one of the primary indicia of an informant's veracity." *Munson*, 594 N.W.2d at 136. Although the Minnesota Supreme Court said, in *State v. Wiley*, that it would "*prefer* more specific language than 'used successfully' to establish an informant's credibility in an affidavit for a search warrant," the supreme court has never required such language. *See* 366 N.W.2d 265, 269 n.1 (Minn. 1985) (emphasis added) (stating that "[i]nformation regarding the past accuracy rate of the informant and

7

the results of prior searches based on the informant's tips, such as whether they led to arrests or convictions, should be provided to the magistrate"). In fact, the supreme court later suggested that an officer's testimony that an informant "had given the police reliable information in the past" was adequate to establish reliability, noting that although "the record [did] not contain specific details of the CRI's record, further elaboration concerning the specifics of the CRI's veracity is not typically required." *Munson*, 594 N.W.2d at 136 (considering credibility in the context of a warrantless automobile search).

Here, the warrant application identified the tipster as a CRI and stated that "[t]his particular C.R.I. has been working for the Task Force since February 2022" and that "[t]he C.R.I. has provided [the task force] reliable information and performed multiple controlled buys for the task force for controlled substances."

As to the CRI's veracity, in its order denying Nagle's motion to suppress, the district court reasoned:

> With respect to veracity, a CRI's proven track record of reliability can establish veracity. Here the affidavit provides that (1) the CRI worked for the Task Force since February 2022 and (2) the CRI had provided reliable information and performed multiple controlled buys for the Task Force. A controlled buy of contraband may be probative. An informant's reliability may be demonstrated to establish probable cause necessary to support issuance of [a] search warrant, where the informant has previously given police correct information, and the affidavit explicitly states this to be the case. Here the supporting affidavit provided the information that the CRI performed multiple controlled buys for the Task Force. This statement provides enough substantiation to give the issuing magistrate sufficient information to verify the informant's credibility.

(Citations omitted.)

8

Applying the deferential standard of review that is required, we cannot say that the district court erred in determining that the CRI was credible. More specific information regarding the CRI's track record was not required. *See id.*

Nagle argues, "assuming *arguendo* that the lack of any corroboration could possibly be overlooked, other circumstances show that the tip did not have sufficient indicia of reliability to establish probable cause to search Nagle's house." As support, Nagle analyzes six factors set forth in *State v. Ross* and argues that those factors indicate that probable cause was lacking. 676 N.W.2d 301, 304 (Minn. App. 2004), *rev. denied* (Minn. June 15, 2004). *Ross* states:

> There are six factors for determining the reliability of confidential, but not anonymous, informants: (1) a first-time citizen informant is presumably reliable; (2) an informant who has given reliable information in the past is likely also currently reliable; (3) an informant's reliability can be established if the police can corroborate the information; (4) the informant is presumably more reliable if the informant voluntarily comes forward; (5) in narcotics cases, "controlled purchase" is a term of art that indicates reliability; and (6) an informant is minimally more reliable if the informant makes a statement against the informant's interests.

*Id.*

The Minnesota Supreme Court recently stated that it has not "specifically endorsed" the six-factor test set forth in *Ross* and that "[o]ur case law contemplates a totality of the circumstances analysis for the assessment of probable cause." *Mosley*, 994 N.W.2d at 887 n.4. Moreover, *Ross* is unlike this case because although *Ross* involved a search based on a CRI's tip, the police did not seek a judicial determination of probable cause—that is, a warrant—before searching based on that tip. *See* 676 N.W.2d at 303 (stating that the issue

9

presented involved the warrantless search of a car). Thus, the deferential standard of review applicable to a warranted search did not apply in *Ross*. In fact, we said that "[i]f a case is close, the *lack of a warrant* may weigh against finding probable cause." *Id.* at 304 (emphasis added). But if the police obtain a warrant before searching based on an informant's tip—as is the case here—the balance tips in favor of the state. *Wiggins*, 4 N.W.3d at 145-46 (recognizing that "doubtful or marginal cases should be largely determined by the preference to be accorded to warrants" (quotation omitted)).

To the extent the six *Ross* factors are a relevant consideration, three of those factors support the district court's conclusion that the informant in this case was reliable: (1) an informant who has given reliable information in the past is likely also currently reliable, (2) the informant is presumably more reliable if the informant voluntarily came forward, and (3) in narcotics cases, "controlled purchase" is a term of art that indicates reliability. *See Ross*, 676 N.W.2d at 304.

Nagle also argues that the CRI's information regarding criminal activity in Nagle's home was too "vague" to establish probable cause. Nagle notes the absence of information from the CRI regarding "who he supposedly saw smoking in the house" and "exactly when he saw that"; "who owned or occupied the house"; "whether the people he or she saw smoking lived there or instead were visitors"; or "whether there was any continuing drug activity at the house before or after the day he or she claimed to have seen 'people' smoking meth there."

"[A]n informant's personal observation of incriminating conduct is the preferred basis for an informant's knowledge." *Mosley*, 994 N.W.2d at 892 (quotations omitted).

An appellate court credits "the fact that the informant had personally observed the conduct or contraband and reported what they saw." *See id.* Nagle argues that even if an informant asserts a personal basis of knowledge, *Mosley* requires at least some police corroboration of the informant's claims. He argues that it is "especially clear" that corroboration was necessary in this case "notwithstanding the claimed basis of knowledge, because there was only a conclusory, bare-bones statement about the informant's reliability and none of the other *Ross* factors support a conclusion the informant is reliable."

Again, Nagle's reliance on the *Ross* factors and *Mosley* as support for her position is unavailing because unlike those cases, this case requires deferential review of a district court's determination of probable cause supporting a search warrant, and not a de novo determination regarding probable cause for a warrantless search. The district court was simply required "to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit," including the CRI's "veracity" and "basis of knowledge," there was "a fair probability" contraband would be found in the place to be searched. *McCloskey*, 453 N.W.2d at 702 (quotation omitted). In addition to considering information regarding the CRI's veracity, the district court considered the CRI's basis of knowledge and reasoned:

> With respect to basis of knowledge, recent personal observation of incriminating conduct has traditionally been the preferred basis for an informant's knowledge. An informant personally seeing controlled substances in a residence within the previous 72 hours shows recent personal observation that indicates the CRI has a basis of knowledge. Here the CRI personally witnessed pipes and persons in the residence smoking methamphetamine within the previous 72 hours of the

11

> search warrant application. The CRI therefore has a credible
> basis for the information provided to the Task Force.

(Citations omitted.)

Applying the deferential standard of review that is required, we cannot say that the district court erred in determining that the CRI's basis of knowledge was credible.

In sum, Nagle essentially contends that every tip that serves as the basis for a search warrant must be corroborated to some extent—even a tip from a CRI whose track record is established and who has reported recent, first-hand observations of criminal activity. That position is inconsistent with the supreme court's continued focus on the totality of the circumstances. *Mosley*, 994 N.W.2d at 887 n.4. And to the extent this is a "doubtful or marginal" case due to the lack of corroboration, our decision is "largely determined by the preference to be accorded to warrants." *Fawcett*, 884 N.W.2d at 385 (quotations omitted). Under that deferential standard, we cannot say that the district court erred in its determination that given all the circumstances set forth in the affidavit, including the CRI's veracity and basis of knowledge, there was a fair probability that evidence of a crime or contraband would be found in Nagle's residence.

**Affirmed.**

12

**FRISCH**, Judge (dissenting)

This matter involves a statement of probable cause in a warrant application based on an uncorroborated tip from a confidential reliable informant (CRI).  The opinion of the court defers to the magistrate's determination of probable cause based on the CRI's uncorroborated tip to search appellant Jennifer Lynn Nagle's residence.  But that is not the end of the probable-cause inquiry.  Minnesota authorities suggest that probable cause based on an informant tip requires corroboration, and the warrant application does not set forth any information to corroborate the CRI's tip.  I respectfully dissent from the opinion of the court because the warrant application does not indicate that "there is a fair probability that contraband or evidence of a crime [would] be found" in Nagle's home.  *State v. Mosley*, 994 N.W.2d 883, 889 (Minn. 2023) (quotation omitted).

I begin with well-settled constitutional principles requiring probable cause for a government search of a private place.  Both the United States and Minnesota Constitutions prohibit "unreasonable searches and seizures" by the government.  U.S. Const. amend. IV; Minn. Const. art. I § 10.  "[T]he reasonableness of a search depends on governmental compliance with the Warrant Clause, which requires authorities to demonstrate probable cause to a neutral magistrate and thereby convince [them] to provide formal authorization to proceed with a search by issuance of a particularized warrant."  *State v. Bartylla*, 755 N.W.2d 8, 15 (Minn. 2008).  And "a person's expectations of privacy are most heightened" where, as here, a search involves a person's home.  *State v. Carter*, 697 N.W.2d 199, 208 (Minn. 2005).  When a search is based on an informant's tip, "probable cause to search exists if, 'given all the circumstances'—'including the veracity and basis of knowledge' of

the informant—'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Mosley*, 994 N.W.2d at 889 (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). These considerations—veracity and basis of knowledge—are not a "rigid two-pronged test" and a "deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." *Id.* at 890 (quotation omitted). In recognition that "each informer is different . . . all of the stated facts relating to the informer should be considered in making a totality-of-the-circumstances analysis." *State v. McCloskey*, 453 N.W.2d 700, 703 (Minn. 1990).

I next identify the information that is set forth in the warrant application, describe the information that is missing from the application, and explain the question presented by these circumstances. The probable-cause statement in the warrant application provides:

> On March 10th 2022, your Affiant was contacted by a Confidential Reliable Informant or C.R.I. who stated that within the last 72 hours, they had been over to [the residence address] and had observed meth pipes inside the house and people smoking meth. The C.R.I. was not directed by law enforcement to go to this residence and did so on their own. This particular C.R.I. has been working for the Task Force since February 2022 and is working for monetary consideration. The C.R.I. has an intimate knowledge of the controlled substances community and has been arrested for controlled substance violations in the past. The C.R.I. has provided [the task force] reliable information and performed multiple controlled buys for the task force for controlled substances.

This probable-cause statement is missing any confirmation or support by additional evidence or authority to substantiate the CRI's tip. Our authorities have not directly

addressed the constitutional validity of a government search pursuant to a signed warrant based on a CRI's uncorroborated tip. Although I agree with the opinion of the court that Minnesota courts generally defer to a warrant signed by a magistrate, and that a CRI is presumed reliable, I do not agree that our deferential standard of review, coupled with the presumed reliability of the informant, are sufficient to establish probable cause where the tip is not corroborated.[2]

First, Minnesota courts scrutinize determinations of probable cause based on an informant tip for corroborating information. In *Wiggins*, the supreme court recently assessed the reliability of an informant tip and an anonymous tip set forth in a warrant application. 4 N.W.3d at 145-50 (evaluating a tip from a confidential informant and an anonymous tip set forth in warrant application). There, the court reviewed the tips as set forth in the application to evaluate the reliability of the information in the tips, the bases of knowledge of the tips, and the totality of circumstances. *Id.* at 146. In so doing, the court

---

[2] I disagree with any suggestion that the standard of review affording deference to a magistrate's signature on a warrant impacts the legal standard for probable cause. While I agree that in such a circumstance the supreme court has made clear that our review includes deference to the magistrate, "recognizing that doubtful or marginal cases should be largely determined by the preference to be accorded to warrants," the supreme court has also made clear that we must still evaluate the totality of circumstances to determine the existence of probable cause. *State v. Wiggins*, 4 N.W.3d 138, 145-46 (Minn. 2024) (quotation omitted). Probable cause only exists where there is a fair probability that contraband or evidence of a crime would be found in the place to be searched. *Gates*, 462 U.S. at 238. And a search is constitutionally invalid in the absence of probable cause. *Cf. Whiteley v. Warden, Wyo. State Penitentiary*, 401 U.S. 560, 566 (1971) (rejecting a less stringent standard for the factual basis supporting an officer's probable-cause determination in the field, as compared to a magistrate's assessment). I am unaware of any authority standing for the proposition that the existence of a magistrate's signature on a warrant alters the legal standard for the existence of probable cause.

expressed—in a *per curiam* opinion—that it "*must* determine whether these tips are corroborated by anything else in the affidavit" submitted in support of the application. *Id.* at 147 (emphasis added) (identifying multiple methods by which a warrant application may set forth corroborating information). The court did not simply defer to the magistrate's determination of probable cause and accept the tips at face value. *Id.* at 146-47. It instead dissected the application for information to corroborate those tips. *Id.* The court ultimately concluded that the tips were sufficiently corroborated based on other factual allegations set forth in the application. *Id.* at 147-48 (concluding that details of a police investigation cited in the warrant application provided corroboration of an informant's tip relevant to a probable-cause determination). I acknowledge that *Wiggins* does not involve a CRI and therefore does not definitively resolve the question of whether a CRI's tip requires corroboration to establish probable cause. But the method that the court used in *Wiggins* to analyze the tips in the warrant is derived in part from and is not different in principle than authority involving a tip from a CRI. *Id.* at 147 (citing cases). I am therefore persuaded that the review conducted by the supreme court in *Wiggins* to determine the reliability of the tips in the warrant application—which requires corroboration of the tips—applies here.

It is true that "[r]ecent personal observation of incriminating conduct has traditionally been the preferred basis for an informant's knowledge." *State v. Wiley*, 366 N.W.2d 265, 269 (Minn. 1985). And here, the informant's basis of knowledge was a firsthand observation of incriminating conduct. But Minnesota authorities addressing warrants based on an informant tip also have required such tips to be supported by *some*

D-4

corroboration. The supreme court also recently relied on *Wiley* and *McCloskey* to evaluate corroborating information supporting a CRI's tip in the context of a warrantless search, recognizing only that "when an informant gives police information based on the informant's personal knowledge, police do not need to corroborate *significant details* in the tip for the tip to be sufficient to support probable cause." *Mosley*, 994 N.W.2d at 892 (emphasis added) (stating that police corroboration of details of a CRI's tip including the vehicle in question, its location, and its license-plate number "len[t] credence" to the informant's tip (quotation omitted)). This analysis of the totality of circumstance is "fact-specific." *State v. Olson*, 436 N.W.2d 92, 95 (Minn. 1989); *see also Wiley*, 366 N.W.2d at 269 (noting that police corroboration of a CRI's statement that a woman named Clare resided at the address in question and parked a 1973 Mercedes in front of that address "len[t] credence" to the tip); *McCloskey*, 453 N.W.2d at 701, 703 (determining that a CRI's tip was sufficiently reliable where the police corroborated that the residence in the CRI's tip was owned by the subject of the tip and verified that the phone number provided by the CRI belonged to the warrant-application subject); *State v. Souto*, 578 N.W.2d 744, 746, 750 (Minn. 1998) (determining that a CRI's tip was sufficiently reliable where the police corroborated calls between the warrant-application subject and an individual identified by the CRI as a drug dealer).

I am also not persuaded that Minnesota authorities equate the presumption of reliability afforded to a CRI *as an individual* with the presumptive reliability of an informant's *tip*. Minnesota caselaw discusses the presumption of reliability as related to the reliability *of an informant*. *Wiggins*, 4 N.W.3d at 149. Minnesota authorities have not

determined that the presumptive veracity of an informant automatically results in the presumptive reliability of their tip and instead examines the totality of circumstances to assess the reliability of the tip. *See Mosley*, 994 N.W.2d at 890 (noting the probable-cause analysis seeks to "determine[e] the overall reliability of a *tip*" (emphasis added) (quotation omitted)). And the examination of the totality of circumstances requires a determination that the tip be corroborated by something else in the application. *See Wiggins*, 4 N.W.3d at 147. Again, this inquiry is "fact-specific." *Olson*, 436 N.W.2d at 95. And there are no facts corroborating the tip in this warrant application.

Second, the other information set forth in the warrant application does not compensate for the absence of corroboration. *See Gates*, 462 U.S. at 233 (explaining that a deficiency in an informant's veracity or basis of knowledge "may be compensated for" by "a strong showing as to the other, or by some other indicia of reliability"). The tip's reliability and the informant's veracity and basis of knowledge are not supplemented by "other indicia of reliability." *See id*. The warrant application provides that the informant had been working with law enforcement for a limited time—about one month—and does not set forth a basis for the informant's credibility outside of a controlled-buy setting. *Cf. State v. Holiday*, 749 N.W.2d 833, 838-39, 841-42 (Minn. App. 2008) (stating that a controlled buy was probative of an informant's veracity where a different CRI attempted a controlled buy from the subject of the warrant application and corroborated details from the initial tip). The warrant application does not offer any information about how frequently law enforcement relied on information supplied by the informant, the police department's CRI procedures or policies, or that the CRI had previously provided reliable

D-6

information of the same type. *See Wiley*, 366 N.W.2d at 269 n.1 (noting that "more specific language" such as "[i]nformation regarding the past accuracy rate of the informant and the results of prior searches based on the informant's tips, such as whether they led to arrests or convictions, *should* be provided to the magistrate" to inform a probable-cause determination (emphasis added)); *Mosley*, 994 N.W.2d at 890-91 (noting police testimony reflecting department policy that police could terminate work with an informant who provided false information). Although Minnesota authorities make clear that a CRI is presumed to be reliable, the reach of that presumption of reliability is less clear. I agree that a CRI's presumption of reliability extends to the identified cooperative behaviors set forth in a warrant application. I do not agree that a CRI is automatically presumed to be universally reliable with respect to any information that they may provide to law enforcement in any context. And the warrant application here does not provide that this CRI had previously provided any reliable, unsolicited information to law enforcement during their approximately one-month relationship.

Moreover, the warrant application does not set forth independent corroboration of the tip by law enforcement or otherwise. *See State v. Cavegn*, 356 N.W.2d 671, 673 n.1 (Minn. 1984) (stating that the reputation and previous convictions of search-warrant subject can support an issuing magistrate's probable-cause determination); *State v. Siegfried*, 274 N.W.2d 113, 115-16 (Minn. 1978) (determining that information that the police obtained independently from other sources identifying the subject of the search warrant "while not sufficient by itself to establish probable cause" supported the issuing magistrate's probable-cause determination).

Finally, the probable-cause statement in the application is remarkably vague. The warrant issued by the magistrate authorized entry into Nagle's home, where her "expectation[] of privacy [was] most heightened." *Carter*, 697 N.W.2d at 208; *see also Silverman v. United States*, 365 U.S. 505, 511 (1961) (stating that "the very core" of the Fourth Amendment is the right of a person to "retreat into [their] own home and there be free from unreasonable governmental intrusion"); *Payton v. New York*, 445 U.S. 573, 601 (1980) (expressing that "overriding respect for the sanctity of the home that has been embedded in our traditions since the origins of the Republic"). Such intrusion is only reasonable, and only constitutionally sanctioned, if probable cause exists to search the residence. *See Bartylla*, 755 N.W.2d at 15 ("Ordinarily, the reasonableness of a search depends on governmental compliance with the Warrant Clause, which requires authorities to demonstrate probable cause to a neutral magistrate and thereby convince him or her to provide formal authorization to proceed with a search by issuance of a particularized warrant."). I cannot conclude that an unsolicited, uncorroborated tip from a CRI that they saw an unidentified person or persons doing something illegal sometime within the last three days establishes a substantial basis from which a magistrate could find probable cause sufficient to permit government intrusion into a Minnesotan's most sacred of personal spaces. I would therefore reverse the decision of the district court denying the motion to suppress evidence obtained from an illegal search.